UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTINA MARIE LANPHERE,  :

            Plaintiff,  :

         -against-  :

CAROLYN W. COLVIN,  :
COMMISSIONER OF SOCIAL SECURITY,  :

            Defendant.  :
------------------------------------------------------------X

**DECISION AND ORDER**
13-CV-5460 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Christina Marie Lanphere ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), alleging that the Commissioner of Social Security ("Commissioner"), improperly denied Plaintiff's request for Social Security disability benefits and Supplemental Security Income ("SSI") benefits. Plaintiff filed a motion for judgment on the pleadings requesting that Commissioner's decision be reversed and remanded for a calculation and award of benefits, or in the alternative, the decision be remanded for a new hearing and decision consistent with the Court's opinion. The Commissioner filed a cross-motion for judgment on the pleadings requesting an order affirming the Commissioner's decision. For the reasons that follow, Plaintiff's motion is GRANTED in its entirety. The Commissioner's cross-motion is DENIED in its entirety. The Court REMANDS the case to the ALJ for further consideration consistent with this decision.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges she has been disabled since August 19, 2008 due to epilepsy, endometriosis, asthma, allergies, and a tumor in her pituitary gland. *See* Dkt. 21 (Administrative Record) ("R."), at 185, 191, 211. Plaintiff was twenty-three years old at the onset of the medical conditions at issue. *Id.* at 185. Plaintiff has a general education degree and previously worked as a dishwasher, a jewelry salesperson, a lingerie salesperson, and a fast food manager. *Id.* at 74-75, 101-102.

Plaintiff filed an application for Social Security disability benefits under Title II and XVIII of the Social Security Act (the "Act") and an application for SSI benefits on October 13,

2010. *Id.* at 185-197. The applications were denied on January 6, 2011, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 111, 121-123. An administrative hearing was held before ALJ Alan Berkowitz ("the ALJ") on July 5, 2012. *Id.* at 68. After the hearing, the ALJ issued a decision on July 12, 2012 finding Plaintiff was not disabled. *Id.* at 29-41. The Appeals Counsel denied Plaintiff's request for review on June 21, 2013. *Id.* at 6-9. This denial became the Commissioner's final act.

## STANDARD OF REVIEW

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. "The substantial evidence test…applies not only to the Commissioner's findings of fact, but also to the inferences and conclusions of law to be drawn from such facts." *Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.) (internal citations omitted). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on

both sides to ensure that the claim "has been fairly evaluated." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)) (quotation marks omitted).

To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269) (internal quotation marks omitted). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

## DETERMINATION OF DISABILITY

### I. Applicable Law

For purposes of both disability benefits and SSI, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See, e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on her RFC, work experience, age, and education. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II. The ALJ's Decision

On July 12, 2012, the ALJ followed the five-step procedure to evaluate Plaintiff's claim and found that: (1) Plaintiff had not engaged in substantial gainful activity since August 19, 2008, the alleged onset date; (2) Plaintiff had severe impairments of post-traumatic stress disorder ("PTSD"), depression, migraine headaches, seizures, and asthma; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b)[1] with the following exceptions: Plaintiff must "avoid dangerous machinery and unprotected heights; can have occasional contact with the public; is limited to routine, repetitive tasks with low stress defined as occasional decision making and occasional changes in the work setting; and must avoid fumes and other respiratory irritants[]"; and (5) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. As a result, the ALJ found that Plaintiff was not disabled from August 19, 2008 to the date of the ALJ's decision on July 12, 2012. R. at 34-41.

In determining that Plaintiff had the RFC to perform light work, the ALJ considered Plaintiff's testimony, as well as the medical opinions of Dr. Lavonna Branker, M.D., an examining physician, Dr. Paul Mullin, M.D., Plaintiff's treating neurologist, Dr. Benjamin Kropsky, M.D., a consultative examiner, and Dr. Mary Carol Mazza, Ph.D., Plaintiff's treating psychologist. *Id.* at 36-39.

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as as "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ ultimately concluded that Plaintiff's testimony regarding the severity of her impairment was not fully credible because her overall testimony was not fully credible. *Id.* at 39. The ALJ also granted little weight to Dr. Mazza's conclusions regarding Plaintiff's psychological analysis because Dr. Mazza's conclusions were not supported by her treatment notes or mental status examinations performed by Dr. Mazza and/or her colleagues. *Id.* at 38-39.

Although the ALJ determined that Plaintiff was not able to perform any past relevant work, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff has the RFC to "perform the requirements of representative occupations such as garment sorter, laundry article sorter, and garment folder." *Id.* at 40-41. As a result, the ALJ determined that a finding of not disabled was appropriate. *Id.* at 41.

### III. The Alleged Errors

Plaintiff argues the ALJ, the Appeals Council, and the Commissioner erred in the four following ways: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ failed to properly evaluate Plaintiff's credibility; (3) the ALJ relied on flawed VE testimony; and (4) the Appeals Council failed to consider new and material evidence. Dkt. 17 ("Pl.'s Br.") at 9-19. Plaintiff requests that the Commissioner's decision be reversed and remanded for a calculation and award of benefits, or in the alternative, the decision be remanded for a new hearing and decision consistent with this Court's opinion. *Id.* at 19.

#### A. <u>The ALJ Failed to Follow the Treating Physician Rule</u>

The Court turns first to Plaintiff's argument that the ALJ failed to follow the treating physician rule. For the reasons set forth below, the Court agrees.

In evaluating the available medical evidence as part of an application for disability benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]." *Clark*, 143 F.3d at 118. Specifically, the regulations provide that:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As such, the opinion of a treating physician will be given controlling weight on the issue of the nature and severity of a claimant's impairments if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If an ALJ decides not to give a treating physician's opinion controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and/or is inconsistent with the other substantial evidence in the case record, then the ALJ must assess six factors in order to determine how much weight to afford the treating medical opinion and other medical opinions: 1) whether the physician examined the claimant; 2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; 3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; 4) the extent to which the opinion is consistent with the record as a whole; 5) whether the medical provider is a specialist; and 6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Remand may be appropriate where the ALJ fails to explicitly consider these six factors. *See, e.g., Balodis v. Leavitt*, 704 F. Supp. 2d 255, 265-68 (E.D.N.Y. 2010) (Bianco, J.) (finding remand appropriate where ALJ did not explicitly consider several factors when rejecting doctor's opinion). In fact, the Second Circuit has instructed that

—7—

remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," or when "opinions from ALJ[]s [] do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Here, Plaintiff only challenges the ALJ's findings with respect to Plaintiff's psychiatric and mental impairments. Dkt. 20 ("Pl.'s Reply") at 1. In this case, Plaintiff has one treating psychologist: Dr. Mazza. Plaintiff argues the ALJ erred when it granted little weight to Dr. Mazza's conclusions because "[t]he ALJ failed to identify any other evidence, let alone substantial evidence conflicting with Dr. Mazza's opinions. Therefore, the treating source's opinions should have been giving controlling weight." Pl.'s Br. at 11 (citations omitted). According to Plaintiff, "[s]ince the ALJ erred by rejecting the opinions from Dr. Mazza, the mental RFC found by the ALJ based on unknown evidence cannot stand." Pl.'s Reply at 1 (internal citations omitted).

In deciding to not give controlling weight to Dr. Mazza's opinions, the ALJ found:

> Dr. Mazza's conclusions are given little weight because they are not supported by Dr. Mazza's treatment notes or mental status examinations performed by Dr. Mazza or her colleagues. For instance, on June 12, 2012, a mental status examination was performed and [Plaintiff] was reported as having a depressed and anxious mood, but otherwise, [Plaintiff] was reported with such findings as appropriate appearance, cooperative attitude, normal motor behavior, normal speech, goal-directed through processes, appropriate thought content, no perceptual disturbances, intact cognition, fair insight, intact judgment, and fair impulsivity.

R. at 39 (internal citations omitted). As a result, the ALJ concluded Plaintiff's RFC assessment "is supported by Dr. Mullin's findings and conclusions, Dr. Branker's findings and conclusions, Dr. Kropsky's findings and conclusions, the negative [electroencephalogram] study, [Plaintiff's]

activities of daily living, and the MRI results." *Id.* For the reasons discussed below, the Court finds that remand is appropriate.

Here, the ALJ concluded that the RFC assessment was supported by Dr. Mullin's, Dr. Branker's, and Dr. Kropsky's findings and conclusions. R. at 39. However, these doctors primarily opined to Plaintiff's physical ability to work – not Plaintiff's mental capacity to work. As such, no substantial distinction was made between Plaintiff's physical disability and Plaintiff's mental disability. For example, Dr. Mullin concluded the following: (1) Plaintiff's seizure disorder caused lapses in Plaintiff's physical awareness that only lasted less than a minute, (2) Plaintiff's prognosis was good with treatment, and (3) Plaintiff had normal cranial nerves, normal deep tendon reflexes, normal motor strength in all extremities, ability to tandem walk, ability to walk on toes, normal grip strength, normal gait, and no evidence of abnormal movement. *Id.* at 295-307. Although Dr. Mullin also found that there were no notable abnormalities with respect to Plaintiff's mental status, Dr. Mullin provided no treatment notes or medical evidence to support this finding. *Id.* at 302.

Similar to Dr. Mullin, Dr. Kropsky reported only normal findings with respect to Plaintiff. Dr. Kropsky found that Plaintiff should avoid smoke, dust, and other respiratory irritants because of her asthma and should possibly avoid driving because of her seizure disorder. However, Dr. Kropsky found that Plaintiff had no other physical limitations. *Id.* at 308-311. Dr. Kropsky made no findings with respect to Plaintiff's mental status. *Id.*

Like Dr. Mullin and Dr. Kropsky, Dr. Branker reported no abnormal findings. Although Dr. Branker diagnosed Plaintiff with epilepsy and asthma, Dr. Branker noted that Plaintiff should avoid work environments where Plaintiff would be exposed to dust, fumes, or other irritants and chemicals. *Id.* at 268-279. Dr. Branker also found that Plaintiff was clinically stable but did

suffer from anxiety. *Id.* at 275-277. As such, Dr. Branker suggested that Plaintiff should avoid high stress environments. *Id.* at 277. However, Dr. Branker did not provide any treatment notes or medical evidence to support her clinical findings with respect to Plaintiff. *Id.* at 268-279.

In contrast, Dr. Mazza opined that Plaintiff had recurrent panic attacks, difficulty thinking or concentrating, feelings of guilt/worthlessness, social withdrawal or isolation, persistent irrational fears, generalized persistent anxiety, decreased energy, and intrusive recollections of a traumatic experience. *Id.* at 385. As such, Dr. Mazza found that Plaintiff had a markedly limited ability to maintain attention and concentration for extended periods and had a markedly limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. *Id.* at 387. Most importantly, given Plaintiff's mental impairments, Dr. Mazza concluded that Plaintiff had a markedly limited ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 388.

Based on the foregoing and the record in this case, the ALJ's RFC assessment is not supported by substantial medical evidence such that it was appropriate for the ALJ to disregard the treating physician rule with respect to Dr. Mazza. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (Garaufis, J.) (citation omitted).

As discussed above, Dr. Kropsky only opined as to Plaintiff's physical conditions and limitations and made no assessment with respect to Plaintiff's mental disability. R. at 308-311. Furthermore, although Dr. Mullin and Dr. Branker concluded that Plaintiff was clinically

—10—

mentally stable, neither doctor provided any treatment notes or medical evidence to support this conclusion. On the other hand and contrary to the ALJ's claim, Dr. Mazza's conclusions were supported by over forty-five pages of treatment notes from July 25, 2011 to May 31, 2012. R. at 337-382. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For example, a mental status examination performed by one of Dr. Mazza's colleagues on July 25, 2011 revealed that Plaintiff was depressed and anxious. R. at 378-379. A psychiatric/psychological questionnaire prepared on June 12, 2012 performed by Dr. Mazza found that Plaintiff suffered from a variety of depressive and panic disorders. *Id.* at 392-394. As a result, it is unclear as to what evidence the ALJ relied on when giving little weight to Dr. Mazza's opinion of Plaintiff's mental capabilities.

Ultimately, there is nothing in the ALJ's decision that would allow this Court to conclude that Dr. Mazza's opinions and conclusions were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As a result, Dr. Mazza's opinion with respect to Plaintiff's mental health should have been given controlling weight. Accordingly, the case must be REMANDED to the ALJ for further consideration of Dr. Mazza's opinion in light of this Court's analysis.

### B. The ALJ Failed to Properly Evaluate Plaintiff's Credibility

Next, the Court turns to Plaintiff's argument that the ALJ erroneously rejected Plaintiff's testimony as incredible. For the reasons set forth below, the Court agrees.

While SSA regulations require an ALJ "to take the claimant's reports of pain and other limitations into account, he or she is not required to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (alterations omitted) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also Fontanarosa v. Colvin*, 13-

CV-03285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citation omitted). "The ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa*, 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012)). "To the extent that a claimant's allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id.* (citations omitted).

In making a credibility determination, the ALJ must consider seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain or other symptoms; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3).

Here, the ALJ concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] testimony concerning the intensity, persistence and limiting effects of these symptoms are not credible to

the extent they are inconsistent with the above residual functional capacity assessment." R. at 37. The ALJ further stated:

> [Plaintiff's] testimony regarding the severity of her impairments is not fully credible because her overall testimony is not fully credible. For example, she testified that she only smokes marijuana one to two times per week. However, it is noted that on July 25, 2011, [Plaintiff] reported that she smokes around three marijuana joints per day. [Plaintiff] also testified that she had a stress fracture in her right foot, but as stated above, X-rays of [Plaintiff's] right foot were negative.
>
> Additionally, it is noted that [Plaintiff] refuses to take any medication for her mental problems, which indicates that [Plaintiff's] symptoms may not be severe as she has alleged. It is also noted that [Plaintiff] did not receive any psychological treatment from 2008 to 2010. It is also noted that [Plaintiff] is able to take care of animals, which indicates functioning that is greater than alleged by [Plaintiff].

*Id.* at 39 (internal citations omitted).

Plaintiff argues that the ALJ's focus on Plaintiff's marijuana usage and negative x-rays of the foot had little relevance to determining the credibility of Plaintiff's testimony. Pl.'s Br. at 14. As such, Plaintiff claims "[t]he ALJ's brief credibility determination was insufficient to find [Plaintiff's] allegations regarding her mental disability not credible." *Id.* Plaintiff is correct.

First, as previously stated, Plaintiff claims disability for PTSD, depression, migraine headaches, seizures, and asthma. R. at 34. Although Plaintiff's testimony regarding her marijuana usage was inconsistent and testimony regarding fractures in her right foot were not supported by medical evidence, it is hard to imagine the ALJ found these statements to be concerning the "intensity, persistence, and limiting effects of [her] symptoms" for PTSD, depression, migraine headaches, seizures, and asthma. *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. May 19, 2014) (Wolford, J.) (internal quotations omitted). Moreover, even if Plaintiff's marijuana usage was relevant to her claims for disability, any inconsistency could be attributed to her change in marijuana usage over time. Pl.'s Br. at 14-15.

Second, it is unavailing that Plaintiff failed to take medicine or receive treatment for her mental problems between 2008 and 2010. There is no evidence in the record that the ALJ took into consideration whether Plaintiff's mental impairments could have impacted her course of mental treatment. "Faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. Sept. 11, 2012) (Suddaby, J.) (incorporated from Magistrate Judge Bianchini's Report and Recommendation) (citation and internal quotation marks omitted). Based on this record, it would be unfair to find that Plaintiff's testimony is not credible because she does not take medication nor seek treatment for her mental problems. There are a variety of reasons as to why an individual may or may not decide to take medication or treatment for mental issues – none which were considered by the ALJ.

Lastly, it is not sufficient for the ALJ to conclude Plaintiff's testimony is not credible because Plaintiff is able to take care of animals. This, without anything further, does not establish that Plaintiff has the RFC to engage in light work. "It is well-settled law in this Circuit that such activity does not, in itself, contradict a claim of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves. *Brown v. Comm'r of Soc. Sec.*, 06-CV-3174, 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) (Vitaliano, J.) (citations and internal quotation marks omitted). Moreover, to the extent Plaintiff's daily activities were considered, "the ALJ failed to place the burden on the Commissioner to show that those activities were evidence of residual functional capacity to perform [light work]." *Id.* (citations omitted). There is no indication in the ALJ's decision that Plaintiff's ability to take care of animals add up to an ability to engage in light work. *See e.g.*, *id.*

Based on the foregoing, REMAND is required for a more detailed credibility evaluation of Plaintiff's testimony.

### C. The ALJ Relied on Flawed VE Testimony

The Court now addresses Plaintiff's argument that the ALJ erroneously relied on flawed VE testimony. Given the Court's determination to remand to the ALJ for further consideration of Dr. Mazza's opinion regarding Plaintiff's mental health, the Court sees no reason to prevent the ALJ from re-examining the VE's testimony in considering whether, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. The Court therefore REMANDS this issue for further analysis by the ALJ.

### D. Failure to Consider New Evidence Before the Appeals Council

Lastly, the Court addresses Plaintiff's argument that the Appeals Council failed to consider new evidence before it. For the reasons discussed below, the Court agrees.

As a general rule, "[i]f the new evidence relates to a period before the ALJ's decision, the Appeals Council shall evaluate the entire record including the new and material evidence submitted and then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing §§ 20 C.F.R. 404.970(b), 416.1470(b)) (internal quotations, brackets, and ellipses omitted). Here, the new evidence consists of medical records from physicians at Beth Israel Medical Group dated September 25, 2008 through February 7, 2012. R. at 395-426. The evidence is new because it had not been considered previously during the administrative process. Additionally, the evidence relates to a period after the Plaintiff applied for disability benefits and before the ALJ's decision on July 12, 2012. Lastly, the evidence is

material as it relates to Plaintiff's mental conditions. *Id.* at 399, 425-426. "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citation omitted). As discussed above, only Dr. Mazza primarily opined about Plaintiff's mental health. Given the Court's determination to remand to the ALJ for further consideration of Dr. Mazza's opinion regarding Plaintiff's mental health, the new evidence could be helpful in providing a basis for influencing the ALJ's ultimate decision. The Court therefore REMANDS this issue so the new evidence is to be considered on remand.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings, Dkt. 16, is GRANTED in its entirety. The Commissioner's cross-motion for judgment on the pleadings, Dkt. 18, is DENIED in its entirety. This matter is hereby REMANDED to the Social Security Administration for further consideration consistent with this opinion.

SO ORDERED.
s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 18, 2015
Brooklyn, New York